RALPH BERNARDINE, PLAINTIFF-APPELLANT, v. ERIE RAILROAD COMPANY, SAMUEL COX, GEORGE MAYER AND NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANTS-RESPONDENTS.

Submitted October 28, 1932—Decided January 31, 1933.

For the plaintiff-appellant, *Richard J. Mackey.*

For the defendants-respondents, *Collins & Corbin.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment of nonsuit entered after a trial in the Supreme Court at the Hudson Circuit. The plaintiff brought suit to recover damages for personal injuries sustained at the Homestead station of the New York, Susquehanna and Western Railroad Company, in or near Jersey City.

At the beginning of the trial the plaintiff discontinued as to the Erie Railroad Company.

The complaint alleged that on December 29th, 1929, a train of defendant made a stop at the Homestead station; that when the plaintiff attempted to board and was in the act of boarding the train, it started with an unusual jerk, through the defendant's negligence, and threw the plaintiff to the ground causing his injuries.

The basis of the action is that the plaintiff was a passenger and as such was entitled to a high degree of care from defendant to protect him from danger that foresight could anticipate, and that defendant failed in the performance of that duty.

The Homestead station building is located in the midst of six tracks.

The tracks run north and south. There are four tracks to the east and two tracks to the west of the building. On each side of the station building there is a cinder platform from which trains are boarded northbound toward Paterson and southbound toward Jersey City. To the north of the station building a public highway known as the Paterson Plank road crosses the railroad tracks, and crossing gates are located on the east and west side of this public highway. The cinder platform of the station extends north from the station building almost to the Paterson Plank road. The northbound trains (those going to Paterson) come into the station on the east side of and adjacent to the station building. The southbound trains come into the station on the west side of and adjacent to the station building.

There is no platform or place to board northbound trains on the east side of the trains.

On the morning of the accident the plaintiff boarded a trolley car for the Homestead station where he intended to take the six forty-five train for Paterson, where he was employed. The trolley car traveled westerly over the Paterson Plank road and stopped on the east side of the railroad tracks. As it came to a stop the plaintiff saw that the train was stopped at the station.

The plaintiff upon alighting from the street car ran to the crossing gates. The gates were down and he had to stoop down and go under them in order to get on the railroad crossing. He then walked across three tracks to the train on the fourth track. The locomotive and baggage-car of the train were standing north of the Paterson Plank road. The plaintiff was on the east side of the train, that is, on the side opposite to the station platform.

As he went from the car to and under the gates and toward the train he took a diagonal course toward the south. He attempted to board the front end of the third car of the train. The front end of this car was within three feet of the south side of the Paterson Plank road. He walked up

the steps and had his left foot on next to the top step and was about to put his right foot on the car platform when the train started. He had hold of the handrail with his left hand. He describes the starting of the train as follows:

"As I got to the top steps, the train gave an unusual jerk, I lost my balance, hit my head and I don't remember nothing after that."

"Q. Now, then, as you was stepping on the platform what do you say happened? A. The train gave an unusual jerk, or sudden jerk."

He took his time walking up the steps. He did not see any trainmen or other passengers.

On every other occasion that the plaintiff had boarded this train, which was twice a week for about two months previous to the accident, he had always boarded it from the station platform, having arrived in time to be on the platform when the train came in. On the other mornings when he boarded the train it stopped in about the same place.

At the conclusion of the plaintiff's case a motion was made for a nonsuit on the grounds, first, that there was no evidence of any negligence; second, that the plaintiff was guilty of contributory negligence; and third, that the plaintiff did not have the status of a passenger at the time of the accident.

The trial court, in granting the motion said, among other things: "The plaintiff in this case was familiar with the entire location, not only of the station and the tracks and platforms but all of the surrounding territory. He got on the wrong side of this train and had not put himself in the position of being a passenger. Not being a passenger there was no duty owing to him except to refrain from acts which were wantonly and willfully injurious."

Appellant argues in his brief only two of the seven points of his grounds of appeal, viz.:

That the jury should have been permitted to determine from the evidence, first, whether the plaintiff was a passenger upon the train at the time of the accident; second, whether the defendant had exercised reasonable care in the operation of the train upon which plaintiff was a passenger.

A careful examination of the evidence in the case convinces us that there were no questions of fact presented by the testimony for the jury to decide.

There was an adequate station platform which plaintiff could have used and in fact which he had always used on every other occasion in taking this or any other train. There was no evidence that the plaintiff on any other occasion, or that anybody else on any occasion, boarded that train or any train going toward Paterson from the side from which plaintiff attempted to board it. There was no proof that the train did not stop the customary length of time to permit passengers to board who were waiting at the station.

There was no proof that any of the servants or agents of defendant saw the plaintiff approach the train from the wrong side and attempt to board it or that they saw him after he had reached the steps and ascended toward the platform, or that they knew or had reason to know that plaintiff was boarding or intended to board the train or was on the train or was in a situation in which a jerk of the train would be dangerous to him.

The case was barren of any evidence that there were insufficient employes to watch the platforms, and ascertain whether passengers had an opportunity to board the train. There was no proof of any custom for employes of defendant to watch the side of the train from which plaintiff attempted to board.

The fact is that not only did the plaintiff not approach the train by the channel and at a place provided for passengers but he disregarded the railroad gate set up by the defendant as a barrier against persons coming from his direction.

Appellant cites numerous cases decided by the courts of our state but none of them present a situation exactly like the instant case. For the most part they are cases where the starting of a trolley car or a train was premature, and where the passengers, to the *knowledge* of defendant's agents operating the car or train had not fully boarded the car or train.

The negligence was in the starting of the car or train with a jerk while the plaintiff was in a dangerous position, which defendant knew or should have known about.

There has not been brought to our attention by appellant or respondent a case in this court on all fours with the instant case. The case of *Trapnell* v. *Hines,* 268 *Fed. Rep.* 504, which dealt with an accident occurring in this state, while differing somewhat factually, yet is in principle analogous to the case now under consideration. The Circuit Court of Appeals in that case said:

"The relation of carrier and passenger commences when a person with a *bona fide* intention to take passage, with the consent of the carrier, express or implied, assumes a situation to avail himself of the facilities of transportation which the carrier offers. The essentials of this relation are that the person intending to become a passenger must present himself at a proper time, and in a proper manner, and at some place under the control of the carrier, so that the carrier may have opportunity to exercise the high degree of care which the law exacts from it in the passenger's behalf. To this end it is essential that the carrier have knowledge of the fact that the person intends to board the train; knowledge in this case being either actual or such as is charged to it by reason of the acts and conduct of the person and by such facts and circumstances as would reasonably inform and notify the carrier of the person's intention to board its train."

Plaintiff did not present himself in a proper manner or at a proper place under such control of the defendant as was available for passengers.

A proper place was provided for passengers and of this the plaintiff was well aware. It is at these proper places that train servants are placed to assist and protect passengers in leaving and entering trains.

There is not a scintilla of evidence to show that the alleged jolt by which the train was started occurred before all the passengers boarding the train from the station platform were safe inside.

The assumption is that if the defendant had had notice

that plaintiff as a passenger was boarding the train it would have given him an opportunity to get on the platform and perhaps inside the car.

We think that under the facts and circumstances of this case the status of the plaintiff was not that of a passenger within the meaning of the word as contemplated by the decisions of this court, for whose safety a common carrier is required by law to exercise a high degree of care.

We are of the opinion that the action of the trial court in granting a nonsuit was proper and that the judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ.  13.

*For reversal*—None.